IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CLEAN ENERGY MANAGEMENT SOLUTIONS, LLC,<br><br>                   Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>                   Defendant, | Civil action no. 2:17-cv-510<br><br>**JURY DEMANDED** |

## COMPLAINT

For its Complaint, Plaintiff Clean Energy Management Solutions, LLC ("Clean Energy"), by and through the undersigned counsel, alleges as follows:

## THE PARTIES

1. Clean Energy is a Texas limited liability company with a place of business located at 1400 Preston Road, Suite 475, Plano, Texas 75093.

2. Defendant Cisco Systems, Inc. is a California corporation with, upon information and belief, a place of business located at 2250 East President George Bush Turnpike, Richardson, Texas 75082.

3. Upon information and belief, Defendant has registered with the Texas Secretary of State to conduct business in Texas.

4. By registering to conduct business in Texas and by having places of business where it regularly conducts business in this District, Defendant has a permanent and continuous presence in Texas.

5. Thus, Defendant has a regular and established place of business in the Eastern District of Texas.

6. Defendant provides the Digital Life control panel and back-office provisioning and applications life-cycle management system for AT&T Digital Life, which allows AT&T Digital Life customers to monitor, protect and manage their homes using a smartphone, tablet or PC. *See* Exhibit https://newsroom.cisco.com/press-release-content?articleId=1122064 (last accessed June 19, 2017), a true and correct copy of which is attached as Exhibit B.

7. Defendant issued a press release that states:

**Digital Life Controller:**

- The Digital Life controller, built by Cisco, comprises the following key hardware and software components:
    - Five radios (one-way and two-way communications radios, Z-Wave, Wi-Fi and 3G) to support a variety of sensors, keypads and cameras.
    - OSGi software framework to streamline new services such as energy management
    - Advanced power management to support up to a 24-hour back-up
    - Advanced diagnostics to help ensure device and service are running reliably
    - Home Plug AV to communicate with devices over the in-home power grid
- The Digital Life controller wirelessly manages an array of connected devices throughout the home by integrating AT&T software with Cisco Z-Wave communications radios. Connected devices include:
    - Cameras
    - Windows/door sensors
    - Smoke, carbon monoxide, motion and glass break sensors
    - Door locks
    - Thermostats
    - Moisture detection and water shut-off
    - Appliance and lighting controls
    - With a network-based approach, it is easy to customize and scale to meet specific customer needs such as remote video monitoring, alarm management and home automation.

*Id.*

8. Defendant's products accused of infringement herein are regularly offered for sale in Allen, McKinney, and Plano, Texas, among other cities in Texas, when AT&T Digital Life home security and automation management products is marketed for sale. *See* https://www.att.com/local/home-security/texas/ (last accessed June 19, 2017), a true and correct copy of which is attached as Exhibit C.

## JURISDICTION AND VENUE

9. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq.*

10. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

11. Upon information and belief, Defendant conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in this district.

12. Venue is proper in this district pursuant to §§ 1391(b), (c) and 1400(b).

## THE PATENT-IN-SUIT

13. On October 11, 2011, U.S. Patent No. 8,035,479 (the "'479 patent"), entitled "Mesh Network Door Lock" was duly and lawfully issued by the U.S. Patent and Trademark Office. A true and correct copy of the '479 patent is attached hereto as Exhibit A.

14. The claims of the '479 patent provide an inventive concept and do not claim an abstract idea and. The inventive concept of the '479 patent greatly enhances home or business automation and security. The use of a code from a mesh network key and a mesh network to provide access to a secured area upon authenticating the code is an improvement over the prior

art in that it provides the effectiveness of the conventional mechanical door latch locks that had not previously been duplicated by the complicated, high power consuming or ineffective prior art electronic lock structures.

15. The claims of the '479 patent, moreover, do not merely recite the performance of a longstanding business practice on a computer; rather the claims describe a solution necessarily rooted in electromechanical technology to solve a problem specifically arising in the realm of automated security.  The patent specification, for example, explains how prior art electronic lock structures were not "pick-proof" low power lock configurations that were compatible with the internal locking mechanisms of universally used conventional key-operated door latch locks. The '479 patent overcame this difficulty, among others, by using an algorithm and an electromechanical device to lock or unlock a secured area based on sending a code from a mesh network key and wirelessly communicating the code over a mesh network, receiving the code at a mesh network lock controller and providing access to a secured area upon authenticating the code.

16. Clean Energy is the assignee and owner of the right, title and interest in and to the '479 patent, including the right to assert all causes of action arising under said patent and the right to any remedies for infringement of it.

## **COUNT I – INFRINGEMENT OF U.S. PATENT NO. 8,035,479**

17. Clean Energy repeats and realleges the allegations of paragraphs 1 through 16 as if fully set forth herein.

18. Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendant has infringed and continues to infringe at least claims 1 and 15 of the '479 patent by making, using, importing, offering for sale, and/or selling, systems and methods that provide access to a

secured area through use of a mesh network, including, but not limited to the Digital Life Controller for AT&T Digital Life.

19. Upon information and belief, Defendant used the accused Digital Life Controller and AT&T Digital Life home security and automation system and services via its internal use and testing in the United States, directly infringing one or more claims of the '479 patent.

20. More specifically, AT&T Digital Life is a home control system that integrates door locks and garage door openers using mesh network connectivity. *See* https://my-digitallife.att.com/learn/explore-home-automation (last accessed June 19, 2017); http://www.electronichouse.com/daily/smart-home/inside-an-att-digital-life-home/ (last accessed June 19, 2017). AT&T Digital Life sends a code to unlock a door and provide access to a secured area using a mesh network. *See* https://my-digitallife.att.com/learn/FAQ-Support (last accessed June 19, 2017); http://www.electronichouse.com/daily/smart-home/inside-an-att-digital-life-home/ (last accessed June 19, 2017). AT&Ts Digital Life includes a controller – build by Defendant that is a full function device that communicates with the end node, through multiple outer nodes, using an integrated coordinator node. *See* AT&T Digital Life: Digital Life User Guide at pp. 2, 9 (available at https://my-digitallife.att.com/content/dam/Support/PDFs/ATT-UM-V3-2015-FINAL-01.30.2015-updated.pdf (last accessed June 19, 2017)); Exhibit B; https://my-digitallife.att.com/support/home-automation-and-devices/touchscreen-control.html (last accessed Apr. 15, 2016); https://play.google.com/store/apps/details?id=com.att.digitallife.android.phone22&hl=en (last accessed June 19, 2017); http://electronicdesign.com/communications/what-s-difference-between-zigbee-and-z-wave (last accessed June 19, 2017). The Z-wave mesh network used by

AT&T Digital Life forwards data from node to node to a destination so that data (unlock or lock command) reaches the destination even if a node fails or is not within range. *See* Exhibit B; http://electronicdesign.com/communications/what-s-difference-between-zigbee-and-z-wave (last accessed June 19, 2017). AT&T Digital Life uses the coordinator node integrated in the full-function device to establish the network and define the main parameters for the mesh network. *See* Exhibit B; AT&T Digital Life: Digital Life User Guide at p. 9 (available at https://my-digitallife.att.com/content/dam/Support/PDFs/ATT-UM-V3-2015-FINAL-01.30.2015-updated.pdf (last accessed June 19, 2017)). The end node (e.g., touchscreen control or smartphone) is a reduced function device which is capable of communicating with the mesh network and does not participate in the routing of the command to lock or unlock the door. *See* https://my-digitallife.att.com/support/home-automation-and-devices/touchscreen-control.html (last accessed Apr. 15, 2016); https://play.google.com/store/apps/details?id=com.att.digitallife.android.phone22&hl=en (last accessed June 19, 2017). The code for locking and unlocking is received at the door lock and enables the locking or unlocking of the door. *See* https://my-digitallife.att.com/support/home-automation-and-devices/door-locks.html?q=lock (last accessed Apr. 15, 2016); http://www.yaleresidential.com/Web/Core/Pages/InfoPage.aspx?id=1577902&epslanguage=en (last accessed June 19, 2017). AT&T Digital Life will unlock the door upon authentication of the code. *See* https://play.google.com/store/apps/details?id=com.att.digitallife.android.phone22&hl=en (last accessed June 19, 2017); https://my-digitallife.att.com/learn/explore-home-automation (last accessed June 19, 2017).

21. Upon information and belief, Defendant's Digital Life controller is sold at stores located in Texas, including, but not limited to, stores located in Allen and Plano, Texas.

22. Defendant's Digital Life controller is specifically made to be used for and with AT&T Digital Life home security and automation management products.

23. Defendant has been on notice of the '479 patent since, at the latest, May 22, 2017, when it received a subpoena regarding its Digital Life controller and AT&T Digital Life's Inc. infringement of the '479 patent.

24. Defendant continues to offer to sell and Defendant's Digital Life controller for the AT&T Digital Life home security and automation system after the date it was put on notice of the '479 patent.

25. Upon information and belief, Defendant's continued infringement despite its knowledge of the '479 patent has been objectively reckless and willful.

26. In particular, Defendant's customers' and end-users' use of the accused AT&T Digital Life home security and automation system and services associated therewith are facilitated by the use of technology patented under the '479 patent, and such system and services would not work without Defendant's Digital Life controller.  Thus, Defendant's customers and end-users are able to use a code from a mesh network key and a mesh network to provide access to a secured area upon authenticating the code when using the AT&T Digital Life home security and automation system and associated service.

27. On information and belief, in order to generate profits and revenues, Defendant markets and promotes, e.g., through its website and sales personnel, the use of its products and services that infringe the '479 patent when used as intended by Defendant's customers and end-users.  Defendant's customers and end-users use such products and services

(including, e.g., the AT&T Digital Life home security and automation system). Upon information and belief, Defendant provided technical information to AT&T Digital Life, and Defendant further instructs its customers and end-users how to use such products in a manner that infringe the '479 patent (e.g., through technical documentation and technical support).

28. Defendant still further makes such products accessible to its customers and end-users, thus enabling and encouraging its customers and end-users to use such products and services to infringe the '479 patent.

29. On information and belief, even though since, at the latest, May 22, 2017, Defendant has been aware of the '479 patent and that AT&T Digital Life is accused of infringing the '479 patent, Defendant has neither made any changes to the functionality, operations, marketing, sales, technical support, etc. of such products to avoid infringing the '479 patent nor informed its customers or end-users how to avoid infringing the '479 patent. To date, Defendant has not identified a single action that it has taken to avoid infringement (e.g., by designing around or notifying its customers or end-users how to avoid infringement) by itself or its customers or end-users since it became aware of the '479 patent.

30. On information and belief, Defendant itself is unaware of any legal or factual basis that its actions solely, or in combination with the actions of its customers and end-users, do not constitute direct or indirect infringement of the '479 patent. To date, Defendant has not produced any opinion of counsel or request for opinion of counsel relating to the validity, scope, interpretation, construction, enforceability, unenforceability, or the infringement or potential infringement of any claim of the '479 patent.

31. As such, on information and belief, despite the information Defendant obtained from the subpoena it received in Case No. 2:16-cv-413 (E.D. Tex.), Defendant

continues to specifically intend for and encourage its customers and end-users to use its products in a manner that infringe the claims of the '479 patent.  In addition, since at least May 22, 2017, Defendant has avoided taking any actions (e.g., designing around, or providing notice to its customers) to avoid confirming that its actions continue to specifically encourage its customers and end-users to use its products and/or services in a manner that infringe the claims of the '479 patent.

32.     Defendant's actions of, *inter alia*, making, importing, using, offering for sale, and/or selling such products constitute an objectively high likelihood of infringement of the '479 patent, which was duly issued by the United States Patent and Trademark Office and is presumed valid.  Since at least May 22, 2017, Defendant is aware that there is an objectively high likelihood that its actions constituted, and continue to constitute, infringement of the '479 patent and that the '479 patent is valid.  Despite Defendant's knowledge of that risk, on information and belief, Defendant has not made any changes to the relevant operation of its products and has not provided its end-users and/or customers with instructions on how to avoid infringement the '479 patent.  As such, Defendant willfully, wantonly and deliberately infringed and is infringing the '479 patent in disregard of Clean Energy's rights under the '479 patent.

33.     Clean Energy is entitled to recover from Defendant the damages sustained by Clean Energy as a result of Defendant's infringement of the '479 patent in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## **JURY DEMAND**

Clean Energy hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Clean Energy requests that this Court enter judgment against Defendant as follows:

A. An adjudication that Defendant has infringed the '479 patent;

B. A judgment that Defendant has induced infringement of the '479 patent;

C. An award of damages to be paid by Defendant adequate to compensate Clean Energy for Defendant's past infringement of the '479 patent and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Clean Energy's reasonable attorneys' fees;

E. An award of enhanced damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the '479 patent subsequent to the date of its notice of the '479 patent; and

F. An award to Clean Energy of such further relief at law or in equity as the Court deems just and proper.

Dated: June 19, 2017         */s/ Richard C. Weinblatt*
Stamatios Stamoulis DE SB #4606
Richard C. Weinblatt DE SB #5080 – Lead Counsel
Stamoulis & Weinblatt LLC
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540
Facsimile: (302) 762-1688
stamoulis@swdelaw.com
weinblatt@swdelaw.com

*/s/ L. Charles van Cleef*
L. Charles van Cleef TX SB #00786305
Van Cleef Law Office
PO Box 2432
Longview, TX 75606-2432
Telephone:  (903) 248-8244
Facsimile:  (903) 248-8249
charles@vancleef.pro

*Attorneys for Plaintiff*
*Clean Energy Management Solutions, LLC*